Gregg M. Mashberg (GM 4022)
Brendan J. O'Rourke (BO 2351)
Jenifer deWolf Paine, Esq. (JP 9393)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-----------------------------------------------------------:
LAUGH FACTORY, INC.                                        :
                                                           :
                          Plaintiff,                       :   JUDGE RAKOFF
                                                           :   08 CV 1887
                                                           :   Civil Action No.
v.                                                         :
                                                           :
RICHARD BASCIANO,                                          :
303 WEST 42ND STREET REALTY COMPANY, and                   :
303 WEST 42ND STREET LLC                                   :
                                                           :
                          Defendants                       :
-----------------------------------------------------------:

## COMPLAINT, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Laugh Factory, Inc. ("Laugh Factory"), by its attorneys, for its complaint against Defendants, alleges as follows:

### Nature of the Claims

1. This is an action for trademark infringement, unfair competition, and trademark dilution under 15 U.S.C. §§ 1114, 1125(a), 1125(c), and for deceptive acts and practices, state dilution, and misappropriation under New York state law.

2.   This action arises out of the Defendants' continued unauthorized use of the federally registered and incontestable mark LAUGH FACTORY to identify a comedy club, which infringes, dilutes, and misappropriates Laugh Factory's exceedingly strong and famous LAUGH FACTORY trademark in a manner that is likely to cause confusion, mistake, and deception among consumers. Laugh Factory seeks preliminary and permanent injunctive relief, compensatory and punitive damages, profits, and attorneys' fees.

### Jurisdiction, and Venue

3.   This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and under the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.   This Court has personal jurisdiction over Defendants because Defendants are located in and/or reside in the State of New York and within this judicial district, are doing business in the State of New York and in this judicial district, and have committed tortious acts within the State and within this judicial district, and the claims arise out of such tortious acts. enue is proper in this district under 28 U.S.C. § 1391 and § 1400.

### Parties

5.   Plaintiff Laugh Factory is a corporation formed under the laws of the State of California, and has a principal place of business at 8001 Sunset Boulevard, Hollywood, CA 90046. Laugh Factory owns and operates the world famous comedy club LAUGH FACTORY in Los Angeles and the sister club in Long Beach, California.

6.   On information and belief, Defendant Richard Basciano is a U.S. citizen and a resident of the State and City of New York, County of New York.

2

7. On information and belief, Defendant 303 West 42nd Street Realty Company is a d/b/a of Richard Basciano, and is located in the State and City of New York, County of New York.

8. On information and belief, Defendant 303 West 42nd Street LLC is a Delaware limited liability company registered to do business in New York and located in the State and City of New York, County of New York.

### Background Facts Common to All Claims for Relief

9. Plaintiff, through itself and its predecessor, has been operating a comedy club in Los Angeles under the name LAUGH FACTORY continuously since 1979. The first comedian to perform at the now world famous Laugh Factory comedy club was Richard Pryor. Since then, many of America's greatest comedians have performed at Plaintiff's comedy club, including Tim Allen, Louis Anderson, Roseanne Barr, John Belushi, David Brenner, Jim Breuer, George Burns, George Carlin, Jim Carrey, Johnny Carson, Dane Cook, Dave Chappelle, Rodney Dangerfield, Ellen Degeneres, Jamie Foxx, Brad Garret, Kathy Griffin, Buddy Hacket, Bob Hope, Dom Irrera, Kevin James, Alan King, Martin Lawrence, Jay Leno, George Lopez, John Lovitz, Bernie Mac, Bill Mahr, Howie Mandel, Steve Martin, Jackie Mason, Carlos Mencia, Dennis Miller, Eddie Murphy, Paul Rizer, Chris Rock, Paul Rodriguez, Ray Romano, Bob Saget, Mort Sahl, Adam Sandler, Jerry Seinfeld, Gary Shandling, Sinbad, Chris Tucker, Damon Wayans, Robin Williams, Jonathan Winters, and Steven Wright, among many many others.

10. The Laugh Factory comedy club has been called the "number one comedy club in the country" by USA Today. It is the subject of a DVD entitled *Live From The Laugh Factory, Vol.I*. As stated in Frommer's 2008 California travel guide book, "just about every comedian

you've seen on TV – living or dead – has been a regular at the Laugh Factory ... you never know when a celebrity guest is going to sneak onstage and try out a new routine." The Laugh Factory comedy club in Los Angeles is regularly visited by tourists from around the country. In short, it is perhaps the best known comedy club in the United States, if not the world.

11. Comedians frequently use an appearance at the Laugh Factory comedy club to get additional work and further their career – the image of a comedian performing on stage in front of the Laugh Factory Logo (as defined below) is a badge of honor.

12. Plaintiff's founder, president, and creative force, Jamie Masada, is extremely well known in the field of professional comedy. He has been called a "true visionary" by the New York Times.

13. Masada has enjoyed a lengthy career as a consultant and producer on some of Hollywood's most successful comedy film franchises, as well as on numerous network and cable television shows. His knowledge and expertise has made Masada the leading authority on all things comedy and his advice is very highly regarded amongst the entertainment industry's top power brokers. Many in the industry seek his guidance and he remains a mentor to performers and industry professionals.

14. Masada produced the late-night show 'Vibe' with Quincy Jones. Masada's knack for spotting talent and his uncanny business genius is superbly illustrated by his work with the hit television show *In Living Color*. He was instrumental in getting the producers to audition two of its biggest break-out stars, Jim Carrey and Jamie Foxx. Masada, along with Bob Israel, was the driving force to get the hit film *Ace Ventura: Pet Detective* off the ground. He was also a co-producer of the feature film *Rocket Man* for Disney.

4

15. Most recently, Masada produced a film with Damon Wayans entitled *Behind the Smile at The Laugh Factory,* featuring numerous popular comedians.

16. Masada's passion for comedy is closely matched by his charitable contributions. His work with underprivileged children won him a NAACP Freedom Award, The Ellis Island Medal of Honor for humanitarian efforts, as well as the ACLU Freedom of Speech Award, among many others. Masada operates a program called the Laugh Factory Camp – it is a comedy camp for underprivileged inner-city children. Mr. Masada recruits the hottest comedians to come to the camp to teach their craft to children between the ages of 8 and 16. Mr. Masada's work with the camp was the subject of a two-hour PBS documentary. The cause of working with and helping children is very near and dear to Mr. Masada's heart.

17. Plaintiff has continuously used the LAUGH FACTORY trademark in connection with its comedy club since 1979. By virtue of this long, continuous, exclusive, and high profile use, and through extensive promotion, sales, and third party media attention throughout the United States and around the world, Plaintiff has developed substantial goodwill, consumer recognition, and value in the LAUGH FACTORY trademark. The LAUGH FACTORY trademark is strong and famous, and thus is entitled to a wide scope of protection under federal and state trademark laws.

18. Also by virtue of Plaintiff's continuous and exclusive use, and through extensive advertising, promotion, sales, and media attention throughout the United States, the LAUGH FACTORY trademark has come to be recognized and relied upon by the relevant trade and consuming public in the United States as identifying services originating exclusively from the

5

same source. The LAUGH FACTORY trademark has great recognition and has come to represent and embody Plaintiff's valuable goodwill and reputation.

19. LAUGH FACTORY is the subject U.S. Trademark Registration No. 1,314,593 for "comedy magazines", "shirts", and "entertainment services, namely comedy presentations." In addition, LAUGH FACTORY with a design element that is used at the club and on merchandise (the "Laugh Factory Logo") is the subject of U.S. Trademark Registration No. 1,721,950 for "tote bags" and "men's and women's jackets, trousers, sweat pants, t-shirts, shirts, shoes, and caps." The Laugh Factory Logo appears as follows:



20. Both U.S. Reg. No. 1,314,593 and 1,721,950 are owned by Plaintiff. They are both valid and subsisting, and have both obtained incontestable status.

## Defendants' Wrongful Acts

21. In 2003, Plaintiff became interested in opening a Laugh Factory comedy club in New York City. During this time period, Jamie Masada and Defendant Basciano met, and Basciano proposed to Masada that they work together to open a Laugh Factory comedy club in a building owned by one or more of the Defendants located at 303 West 42nd Street, New York, NY and 300 West 43rd Street, New York, NY.

22. Plaintiff and Defendants eventually agreed to open a LAUGH FACTORY comedy club in the Times Square area through entities controlled by each of them on a 50/50 basis. Extensive documents regarding the proposed relationship were drafted and negotiated, but never finally agreed upon or executed.

23. On or about March 27, 2004, Plaintiff and Basciano through his controlled entities opened a comedy club under the name LAUGH FACTORY at 669 – 677 8th Avenue (a/k/a 303 West 42nd Street and 300 West 43rd Street, New York, NY (the "Times Square Club"). The Times Square Club prominently and repeatedly uses the LAUGH FACTORY trademark as well as the Laugh Factory Logo, both in signage, merchandising, and advertisements and promotional materials.

24. The Times Square Club operated under the LAUGH FACTORY name with Plaintiff's permission until September 14, 2007. During that time, Jamie Masada was a regular consultant to the club, arranging the schedule, booking talent, and approving bookings. Although it was agreed between the parties that Masada would have approval over all bookings, Masada eventually discovered that comedians were booked in the club without his knowledge or approval. Increasingly, Basciano ran the Times Square Club on his own,

excluded Plaintiff from the business, and refused to give Plaintiff access to its books and records. Despite Plaintiff's and Jamie Masada's substantial monetary investment in the Times Square Club and devotion of his time and energies, he did not receive remuneration.

25.     In July 2007, Mr. Masada received a letter from American Express stating that a customer had complained that pornographic material had been displayed in the presence of schoolchildren at the Times Square Club. Mr. Masada was extremely upset by this development.

26.     On September 14, 2007, Plaintiff withdrew its permission for the use of the LAUGH FACTORY trademark and Laugh Factory Logo and instructed Defendants to remove all "logos, images and brand references to and about the Laugh Factory by October 15, 2007" (the "Withdrawal Notice").

27.     Since receiving the Withdrawal Notice, Defendants alternately stated (a) that they would remove all LAUGH FACTORY signage, and (b) refused to do so.

28.     Since withdrawing permission to use the LAUGH FACTORY trademark and Laugh Factory Logo in connection with the Times Square Club, Plaintiff and Jamie Masada have no longer been involved in the bookings or operation of the Times Square Club.

29.     To date, despite numerous and repeated requests to remove all references to the LAUGH FACTORY from the Times Square Club, Defendants have failed to do so, and it has become apparent that they will not do so voluntarily.

30.     Thus, Defendants are now operating a comedy club under the LAUGH FACTORY trademark and the Laugh Factory Logo without Plaintiff's authorization.

31. The effect of Defendants' use of the LAUGH FACTORY trademark and the Laugh Factory Logo in connection with the Times Square Club has been and, unless enjoined by this court, will continue to be to lead consumers to mistakenly believe that the services offered at the Times Square Club originate with Plaintiff, or are sponsored by, approved by, or affiliated with Plaintiff.

32. In fact, Defendants' use of the LAUGH FACTORY trademark and the Laugh Factory Logo in connection with the Times Square Club, with which Plaintiff has no affiliation or connection and from which Plaintiff receives (and has received) no benefit, will interfere with Plaintiff's right and ability to open a genuine LAUGH FACTORY comedy club in New York.

33. On information and belief, Defendants are operating their infringing Times Square Club with the object and intent of deceiving and misleading consumers into believing that the Times Square Club is affiliated, connected, or associated with Plaintiff, or that it originates from, or is otherwise sponsored or approved by, the source of Plaintiff's services. Further on information and belief, Defendants are operating the infringing Times Square Club with the additional object and intent to misappropriate the goodwill and consumer recognition of Plaintiff's famous LAUGH FACTORY services.

34. Defendants' use of the famous LAUGH FACTORY trademark and Laugh Factory Logo in connection with the Times Square Club is likely to dilute and blur the distinctive qualities of the famous LAUGH FACTORY trademark and the Laugh Factory Logo in the minds of the consuming public and, upon information and belief, Defendants have willfully intended to cause such dilution.

35. Defendants' operation of a comedy club under Plaintiff's famous trademark LAUGH FACTORY and under the Laugh Factory Logo substantially and irreparably injures Plaintiff by impairing and threatening to impair the goodwill Plaintiff has created for its services, and by permitting Defendants to misappropriate and trade upon the familiarity and excellent reputation of Plaintiff's services and trademarks.

36. While Mr. Masada was booking the acts, The Times Square Club drew upon on the same pool of talent as Plaintiff's Laugh Factory clubs in Los Angeles and Long Beach California.

37. Since Mr. Masada stopped booking the acts, the Times Square Club no longer draws upon the same pool of talent as does Plaintiffs other clubs. However, consumers attending The Times Square Club expect to see the same pool of talent for which Plaintiff is famous and many consumers – tourists and others seeking live comedy performances – attend both Plaintiff's Laugh Factory comedy club and Defendants' infringing Times Square Club. Defendants' unauthorized use of the LAUGH FACTORY trademark and Laugh Factory Logo is irreparably damaging Plaintiff's reputation and the reputation of the Laugh Factory comedy clubs in Los Angeles and Long Beach California.

38. The foregoing acts by Defendants have been willful, intentional, and purposeful, and with callous disregard of Plaintiff's rights.

39. Plaintiff is suffering, and will continue to suffer, irreparable injury from the foregoing acts of Defendants for which there is no adequate remedy at law.

40. Further, the foregoing acts of Defendants have caused and are likely to continue to cause Plaintiff to suffer substantial damages.

41. The foregoing acts have occurred in, or in a manner affecting, interstate commerce.

### First Claim For Relief
### (For Trademark Infringement Pursuant to 15 U.S.C. § 1114)

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. As detailed above, Defendants have used in commerce copies of Plaintiff's federally registered trademarks in connection with the sale, offering for sale, and advertising of services in manner that is likely to cause confusion, mistake, or to deceive.

44. The foregoing acts of Defendants constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114.

### Second Claim For Relief
### (For Unfair Competition Pursuant to 15 U.S.C. § 1125(a))

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46. Defendants have and are operating a comedy club and selling related merchandise under Plaintiff's LAUGH FACTORY trademark and Laugh Factory Logo in a manner that is likely to cause confusion among the consuming public.

47. Defendants' acts constitute a false designation of origin and a false description of fact that is likely to cause confusion, or to cause mistake, or to deceive the relevant consuming public concerning whether Defendants' Times Square Club is affiliated, connected, or associated

with, or approved by, Plaintiff.  Defendants' acts are further likely to damage the reputation and goodwill previously established by Plaintiff in its LAUGH FACTORY comedy club.

48.  The foregoing acts of Defendants constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### Third Claim For Relief
### (For Federal Trademark Dilution Pursuant to 15 U.S.C. § 1125(c))

49.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.  Plaintiff's LAUGH FACTORY trademark and Laugh Factory Logo are famous and distinctive.

51.  Defendants' acts as described above are likely to dilute the distinctive quality of the LAUGH FACTORY trademark and Laugh Factory Logo.

52.  Defendants' acts constitute a violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

### Fourth Claim For Relief
### (For Deceptive Acts and Practices In Violation of N.Y.
### Gen. Bus. Law § 349 and similar laws in other states)

53.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

54.  The foregoing acts of Defendants constitute deceptive acts and practices in the conduct of a business, trade, and commerce in violation of (a) New York General Business Law

§ 349, and (b) similar statutory and common laws of each and every state in which Defendants have advertised or promoted the Times Square Club.

### Fifth Claim For Relief
### (For Trademark Dilution In Violation of N.Y. Gen. Bus. Law § 360-*l* and similar laws in other states)

55.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 54 as if fully set forth herein.

56.  The foregoing acts of Defendants have injured, and will continue to injure unless enjoined, Plaintiff's business reputation, and have diluted, and will continue to dilute unless enjoined, the distinctive qualities of Plaintiff's LAUGH FACTORY trademark and Laugh Factory Logo in violation of (a) New York General Business Law § 360-*l*, and (b) similar statutory and common laws of each and every state in which Defendants have advertised or promoted the Times Square Club.

### Sixth Claim For Relief
### (For State and Common Law Trademark Infringement)

57.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 as if fully set forth herein.

58.  The foregoing acts of Defendants constitute state and common law trademark and trade dress infringement in violation of the state and common law of the State of New York and each and every other state in which Defendants have advertised or promoted the Times Square Club and that recognize state and/or common law trademark and trade dress infringement claims.

## Seventh Claim For Relief
### (For State and Common Law Unfair Competition/Misappropriation)

59.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60.     The foregoing acts of Defendants constitute unfair competition and misappropriation in violation of the state and common law of the State of New York and each and every other state in which Defendants have advertised or promoted the Times Square Club and that recognize state and/or common law claims for unfair competition and/or misappropriation.

WHEREFORE, Plaintiff respectfully prays for Judgment to be entered against Defendants as follows:

A.      Preliminarily, during the pendency of this action, and permanently, restraining and enjoining Defendants, any person or entity with which Defendants is affiliated, and his and their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice thereof, jointly and severally:

   i.    from using the LAUGH FACTORY trademark or the Laugh Factory Logo in any way in connection with the operation of the Times Square Club, including but not limited to signage, programs, advertisement or promotional materials, or merchandise;

   ii.   from using on or in connection with any product or service or the (a) any mark, logo, or designation that is confusingly similar to the LAUGH FACTORY trademark or the Laugh Factory Logo; and (b) any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the minds of the public or to deceive the public into the belief that the Times Square Club or any other

products or services offered by Defendants are the same as or associated with Plaintiff's products or services;

   iii. from representing by any means whatsoever, directly or indirectly, that any products or services sold or provided by Defendants are associated with, sponsored by, and/or connected or affiliated with Plaintiff or Plaintiff's products or services or from otherwise taking any action likely to cause confusion, mistake or deception on the part of purchasers as to the origin or sponsorship of Defendants' products or services;

   iv. from causing, engaging in or permitting others to do any of the aforesaid acts;

 B. Directing Defendants to deliver up to this Court during the pendency of this action for impoundment, destruction or other disposition, all products and materials in his possession or control that violate any of the provisions of Paragraph A, above, including, without limitation, all merchandise, transfer designs, packaging, package inserts, labels, signs, prints, wrappers, receptacles, advertising or other materials, and the means for making or reproducing same, which violate the provisions of Paragraph A above, or any portion thereof;

 D. Directing Defendants to file with the Court and serve upon counsel for Plaintiff, within thirty (30) days after entry of any preliminary or permanent injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction;

 E. Directing Defendants to account for and relinquish to Plaintiff all direct and indirect gains, profits, and advantages derived from Defendants' wrongful acts as described above;

F.  Directing that Defendants' direct and indirect gains, profits, and advantages derived from Defendants' wrongful acts as described above be placed in a constructive trust for the benefit of Plaintiff;

G.  Directing that Defendants pay Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' wrongful acts complained of herein;

H.  Directing that the aforesaid amounts be multiplied or otherwise enhanced as authorized by law;

I.  Awarding Plaintiff, on its state law claims, compensatory damages in an amount to be determined at trial;

J.  Awarding Plaintiff punitive damages in such amount as may be determined at trial;

K.  Awarding Plaintiff prejudgment interest according to the law;

L.  Finding this to be an "exceptional case" within the meaning of the Lanham Act, and directing that Defendants pay Plaintiff the costs of this action and its reasonable attorneys' fees; and

M.  Granting Plaintiff such other and further relief as the Court may deem just and proper.

Plaintiff requests a jury on all issues so triable.

Dated: New York, New York
       February 25, 2008

PROSKAUER ROSE LLP

By: _____
Gregg M. Mashberg (GM 4022)
Brendan J. O'Rourke (BO 2351)
Jenifer deWolf Paine (JP 9393)
1585 Broadway
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900

Attorneys for Plaintiff

17